In re James A. GOODSON d/b/a J B Country Bar-B-Que, Debtor.

J. Donald BUFFKIN, Plaintiff,

v.

James A. GOODSON d/b/a J B Country Bar-B-Que, Defendant.

Bankruptcy No. 81–00234–BKC–JAG.
Adv. No. 81–0261–BKC–JAG–A.

United States Bankruptcy Court,
S. D. Florida.

July 24, 1981.

Joseph Easthope, Houston, Faircloth, Easthope & Traver, Fort Lauderdale, Fla., for plaintiff.

Clyde W. Manspeaker, Manspeaker & Barnard, Fort Lauderdale, Fla., for debtor-defendant.

## FINDINGS AND CONCLUSIONS

JOSEPH A. GASSEN, Bankruptcy Judge.

This adversary proceeding was tried on the complaint of J. Donald Buffkin, landlord of the debtor, on his complaint for relief from stay or for adequate assurance or abandonment.

On April 17, 1980, plaintiff entered into a one year written lease of a restaurant located at 2020 South State Road 7, Fort Lauderdale, Florida with debtor-defendant James A. Goodson and Goodson's then-partner, W. E. Lanigan (Plaintiff's Exhibit No. 1). Lanigan is not a party to this law suit.[1] The rent to be paid under the lease was $3,000 per month plus sales tax on the rental ($120 per month), a percentage of gross sales factor (five percent), and a $150 a month food allowance. Paragraph three of the addendum to the lease gave lessee an option to renew the lease for five years. There was no expressed condition on the exercise of the option, nor was any time given for exercising the option.

Buffkin testified that the early rental payments were made, but in about September, 1980, payment became erratic. He began collecting rent on a weekly basis and at some point agreed to temporarily accept payments of $520 per week until defendant "got back on his feet". It was plaintiff's testimony that he did not waive payment in full but only temporarily accepted a partial payment. The five percent of gross sales was not paid at any time, and Buffkin estimated that $10,000 to $12,000 would be due him, based on Goodson's information about sales. The last weekly payment received by plaintiff was on February 9, 1981. Defendant gave conflicting testimony on the amount of base rental arrearages, but essentially conceded that he could not rebut the landlord's testimony. He did not testify on the subject of the amount of rent due from gross sales, but testified that the landlord did obtain his food allowance.

The debtor's voluntary chapter 11 was filed on February 19, 1981. On February 20, 1981, the landlord sent to defendant a Notice to Pay Rent or Vacate (Plaintiff's Composite Exhibit No. 2). Two letters were sent by certified mail, return receipt requested, to defendant's place of business (the leased premises) and were returned unclaimed. On March 26, 1981, defendant notified Buffkin that he intended to exercise his option to renew the lease under paragraph three.

The last two debtor-in-possession biweekly reports which have been filed, for the period May 16, 1981 through June 12, 1981 (Court Paper Numbers 16 and 17) show increasing deficits in the balance on hand. On or about June 15, 1981, the debtor-in-possession ceased operation at the restaurant and the premises are now vacant.

Goodson testified as to his plans for turning the business around and stated that several people are "interested" in putting money into the business, but there was no other evidence that the debtor-in-possession has the wherewithal to continue the business, much less to make up arrearages in rent or to assure future performance under the lease.

Plaintiff's argument that its notice to vacate does not come within the terms of the automatic stay of § 362 and was effective to terminate the lease, is without merit. This is a classic example of the type of situation where the Bankruptcy Code protects a debtor by forestalling his creditor-landlord from exercising otherwise available remedies and permits a debtor to cure past defaults. However, the Code does give a landlord the protection of requiring that those defaults be cured. Under 11 U.S.C. § 365(b)(1), a trustee (or debtor-in-posses-

---

1. Although the lease shows J & B, Inc. as the lessee of the premises, Goodson's business was not, in fact, incorporated, and Goodson and Lanigan executed the lease.

sion) may not assume a lease which is in default unless he:

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

In the present case, it is undisputed that the lease was in default prior to the filing of the bankruptcy petition, although the amount of rental arrearages is disputed. The debtor-in-possession has not cured, or made any offer to cure such defaults. Neither has it provided adequate assurance of future performance under such contract or lease. This court, therefore, concludes that the debtor-in-possession may not assume this lease. It is therefore terminated, and plaintiff may retake the premises.

Because relief must be granted to plaintiff under § 365(b)(1), the court does not reach the question of whether or not the lessee was prohibited from exercising the option to renew the lease because of his prior default in the payment of rent.

Pursuant to Bankruptcy Rule 921(a), a Final Judgment incorporating these Findings and Conclusions is being entered this date.